UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

CCH JOHN EAGAN I HOMES, L.P.                   Case No. 25-24569- MAM
                                               (Jointly Administered)


CCH JOHN EAGAN II HOMES, L.P.,                 Case No. 25-24571-MAM

        Debtors.                               Chapter 11
_____/

## DISCLOSURE STATEMENT IN SUPPORT OF
## JOINT CHAPTER 11 PLAN OF REORGANIZATION


March 9, 2026


Philip J. Landau, Esq.
**LANDAU LAW, PLLC**
3010 N. Military Trail, Suite 318
Boca Raton, Florida 33431
Telephone: (561) 443-0802
Email: plandau@landau.law

**ATTORNEYS FOR THE DEBTOR**


1

**DISCLOSURE STATEMENT**
**FOR JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**PROPOSED BY CCH JOHN EAGAN I HOMES, L.P. & CCH JOHN EAGAN II**
**HOMES, L.P.**

> **THE DEBTORS RESERVE THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.**

## I.    INTRODUCTION

CCH John Eagan I Homes, L.P. ("CCH I") and John Eagan II Homes, L.P. ("CCH II") (each a "Debtor", and collectively, the "Debtors") (the "Debtor" or Plan Proponent") provides this Disclosure Statement (the "Disclosure Statement") to all of the Debtors' creditors in order to permit such creditors to make an informed decision in voting to accept or reject the Chapter 11 Plan Proposed By the Debtor (the "Plan") dated and filed on March 9, 2026 with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in connection with the above-captioned case (the "Chapter 11 Case"). A copy of the Plan is attached to this Disclosure Statement as **EXHIBIT A**. Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

The Disclosure Statement is presented to certain holders of Claims[1] against the Debtors in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the Debtors' creditors, to make an informed judgment whether to accept or reject the Plan. The Disclosure Statement may not be relied upon for any purpose other than that described above.

**THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED. THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.**

**NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THE VALUE OF ITS PROPERTY) ARE AUTHORIZED BY THE PLAN PROPONENT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE PLAN PROPONENT, WHO WILL IN TURN DELIVER SUCH**

---

[1] Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan.

INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF THE DEBTORS AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN.  ACCORDINGLY, THE PLAN PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING THE DEBTORS OR ITS FINANCIAL CONDITION IS ACCURATE OR COMPLETE.   THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE PLAN PROPONENT'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, THE PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS ARE CORRECT.  THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  EACH CREDITOR IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.

A STATEMENT OF THE ASSETS AND LIABILITIES OF THE DEBTORS AS OF THE DATE OF THE COMMENCEMENT OF THESE CHAPTER 11 CASES IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

**THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.**

Pursuant to the Bankruptcy Code, the Plan was filed with the Bankruptcy Court on March 9, 2026 and this Disclosure Statement was filed thereafter.  The Bankruptcy Court will schedule a hearing on approval of this Disclosure Statement (the "Disclosure Hearing") and a separate hearing on confirmation of the Plan (the "Confirmation Hearing"), each to be held at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Dr., Room 801, Courtroom A, West Palm Beach, Florida 33401.  At the Disclosure Hearing and the Confirmation Hearing, the Bankruptcy Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact Landau Law, PLLC, 3010 N. Military Trail, Suite 318, Boca Raton, FL 33431, Phone: (561) 443-0808.

A.      **Overview of the Plan**

**THE DESCRIPTION OF THE PLAN SET FORTH HEREIN CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE PLAN DOCUMENTS.  THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

Chapter 11 is the chapter of the Bankruptcy Code primarily used for reorganization.  The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors.  With this purpose in mind, individuals and businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation.  Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and interests in a debtor's bankruptcy estate.

The Plan divides the Claims against the Debtors into Classes.  Certain Claims—in particular, Administrative Claims—remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code.  The Plan assigns all other Claims and Interests as described below.

| Class | Description | Approximate Amount Asserted | Estimated Allowed Amounts | Estimated Recovery | Status |
|-------|-------------|-----------------------------|---------------------------|--------------------|--------|
| N/A | Administrative Claims | $350,000.00 | $350,000.00 | 100% | Unclassified and not entitled to vote |
| N/A | Priority Tax Claims | $120,957.49 | $120,957.49 | 100% | Unclassified and not entitled to vote |

4

| Class | Description | Approximate Amount Asserted | Estimated Allowed Amounts | Estimated Recovery | Status |
|---|---|---|---|---|---|
| N/A | US Trustee's Fees | $3,987.31 | $3,987.31 | 100% | Unclassified and not entitled to vote |
| 1 | Allowed Secured Claim of Lending Group US, LLC | $5,862,524.00 | $5,862,524.00 | 100% | Impaired |
| 2 | Allowed Secured Claim of Bridgeview Funding, LLC | $7,995,631.00 | $7,995,631.00 | 100% | Impaired |
| 3 | Secured Claims of Housing Authority of the City of Atlanta, Georgia | $13,092,946.12[2] | Unknown | 100% | Impaired |
| 4 | Allowed General Unsecured Claims | CCH 1 $3,867,236 CCH 2 $3,883,661 | CCH 1 $3,580,262 CCH 2 $3,683,000 | 100% | Impaired |
| 5 | Equity | N/A | N/A | 100% | Impaired |

**B.     Voting Instructions**

The Bankruptcy Code entitles only holders of impaired claims who receive some distribution under a proposed plan to vote to accept or reject that plan.  Holders of claims that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on the Plan.  Holders of classes of claims that will receive no distributions under a proposed plan are deemed to reject that plan and, therefore, not entitled to vote on the Plan.  Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.  Under the Plan, Classes 1, 2, 3, 4 and 5 are impaired and entitled to vote on the Plan.

## II.     BACKGROUND OF DEBTOR

The Debtors own an apartment complex located at 60 Paschal Blvd., NW, Atlanta, Georgia 30314; the complex is commonly known as the Magnolia Park Apartments ("Magnolia Park" or the "Property").  CCH I is the owner of Phase I of Magnolia Park, it consists of 16 two and three-story garden style apartment buildings containing 220 one, two, and three-bedroom apartments. CCH II owns Magnolia Park Phase II, located immediately north of Phase I.  Phase II consists of 15 two and three-story garden-style and townhome buildings containing 180 one, two, and three-bedroom apartments.  Phase I and Phase II share all common facilities and amenities such as the pool, clubhouse (includes daycare center), tennis courts, playground, management office, and all roads.

---

[2] Pursuant to the terms of the parties' pre-petition loan agreements, these amounts are "soft loans" which .

On December 10, 2025, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The bankruptcy filing was precipitated by a dispute with the Housing Authority of the City of Atlanta, Georgia ("AHA") over the terms of a settlement agreement and an alleged breach of that agreement.  Both the Debtors and the Authority allege that the settlement agreement had been breached and a state court recently appointed a receiver over the properties owned by the Debtors.  Both of the Debtors' senior lenders (Lending Group US, LLC and Bridgeview Funding, LLC) opposed the appointment of the receiver over the properties.

The Debtors filed these cases in order to financially restructure and reorganize and to complete needed repairs, maintenance, and to ultimately redevelop the property.

## III.     THE CHAPTER 11 CASE

### A.     Commencement of the Chapter 11 Case

As set forth in Article II above, the Debtors filed for chapter 11 bankruptcy in order to restructure its finances and to complete needed repairs, maintenance, and to ultimately redevelop the property.

### B.     Retained Professionals

The Bankruptcy Court has authorized Debtors to retain certain professionals in connection with the Case.  Specifically, the Debtor has retained Landau Law, PLLC. as general bankruptcy counsel.  [ECF No. 56][3].  The Debtors may employ other professionals in the Case.

### C.     Motions Authorizing Use of Cash Collateral

During these chapter 11 cases, the Debtors have filed several motions and budgets requesting the use of cash collateral [See ECF Nos. 10, 31, 62 and 75].  Through agreements and approved budgets with AHA, the Debtors have received authority to continue to operate and use cash.

### D.     AHA's Motion to Excuse Turnover Pursuant to Section 543 of the Bankruptcy Code

On December 13, 2025, AHA filed its Motion to Excuse Turnover Pursuant to Section 543 of the Bankruptcy Code [ECF No. 23].  AHA and the Debtors have been working throughout these Cases to resolve this motion and have continued the hearing on this matter several times.  The motion is presently set for a continued hearing on March 31, 2026.

### E.     The Claims Process

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the

---

[3] Unless otherwise stated, ECF numbers refer to filings in CCH I's Bankruptcy Case.

debtor's bankruptcy case.  The Court establishes a "bar date"—a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution. After the filing of all claims, the debtor evaluates such claims and can raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors.

The deadline for filing proofs of Claims against the Debtors, other than claims of governmental units and Administrative Claims shall be the last date for creditors to file Proofs of Claim in the Case, which was established by the Court as February 18, 2026 (the "General Bar Date").

The Debtors will review, analyze and resolve Claims on an ongoing basis as part of the claims reconciliation process.  Nonetheless, additional claims may be asserted against the Debtors subsequent to the expiration of the General Bar Date and the actual ultimate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Plan Proponent's estimates.  Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

## IV.    CHAPTER 11 PLAN

**THE FOLLOWING IS A BRIEF SUMMARY OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.  THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN. CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN. SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN.  ALL HOLDERS OF CLAIMS ARE URGED TO REVIEW THE PLAN CAREFULLY.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON THE DEBTORS AND ALL HOLDERS OF CLAIMS.**

### A.    Plan Overview

The Debtors believe that confirmation of the Plan provides the best opportunity for maximizing recoveries for Creditors.

### B.    Unclassified Claims

#### 1.    Allowed Administrative Claims

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims.  All other holders of Allowed Administrative Claims (with the exception of the professionals who will be paid 100% of the amount allowed by the Bankruptcy Court upon application to the Bankruptcy Court and those Claims otherwise specifically dealt with in the Plan)

shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Bankruptcy Court, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.  Regarding the Debtors' professionals, the Court will set a deadline prior to the Confirmation Hearing for said professionals to file final applications for compensation to be considered at the Confirmation Hearing.  The Debtor(s) estimates that there will be a total of $350,000.00 in Allowed Administrative Claims.

### 2.      Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under § 507(a)(8) of the Code has been paid by the Debtor(s) prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in full by the Debtor(s) on the sooner of the LIHTC Closing or in quarterly payments beginning on the Effective Date over a period no longer than five (5) years after the Petition Date.  The Debtors' only known priority tax claim belongs to the Fulton County Tax Commissioner in the amount of $120,957.49.

### 3.      United States Trustee's Fees

The Reorganized Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date.  The Reorganized Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Reorganized Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

## C.      Treatment of Claims

### Class 1.  Allowed Secured Claim of Lending Group US, LLC

(a)      Description.  Class 1 consists of the Allowed Secured Claim of Lending Group US, LLC in the approximate amount of $5,862,524.00 secured by the Debtors' real property. See Proof of Claim No. 15-1.

(b)      Treatment. Except to the extent that the holder of the Allowed Secured Claim has been paid by the Debtor(s) or some other party prior to the Effective Date or agrees to a different treatment, the Class 1 Claimholder shall be paid in full from the proceeds of the LIHTC Transaction.

(c)      Impairment.  The Class 1 Claim is Impaired.

**Class 2.   Allowed Secured Claim of Bridgeview Funding, LLC**

(a)     Description.  Class 2 consists of the Allowed Secured Claim of Bridgeview Funding, LLC in the approximate amount of $7,995,631.00 secured by the Debtors' real property. See CCH II Proof of Claim No. 9-1.

(b)     Treatment. Except to the extent that the holder of the Allowed Secured Claim has been paid by the Debtor(s) or some other party prior to the Effective Date or agrees to a different treatment, the Class 2 Claimholder shall be paid in full from the proceeds of the LIHTC Transaction.

(c) Impairment.  The Class 2 Claims are Impaired.

**Class 3.   Allowed Secured Claims of the Housing Authority of the City of Atlanta, Georgia**

(a)     Description.   Class 3 consists of the Secured Claims of the Housing Authority of the City of Atlanta, Georgia (the "AHA Secured Claims") in the approximate amounts of $7,338,275.86 (CCH I Proof of Claim 17-1) and $5,754,670.26 (CCH II Proof of Claim No. 11-1), which are secured by the Debtors' real property.

(b)     Treatment. Except to the extent that the holder of the AHA Secured Claims has been paid by the Debtor(s) or some other party prior to the Effective Date or agrees to a different treatment, the Allowed Amount of the AHA Secured Claims shall be satisfied in full through the LIHTC Transaction.  Until completion of the LIHTC Transaction, AHA shall receive monthly payments (if any) as required pursuant to the parties' prepetition loan documents.

(c) Impairment.  The Class 3 Claims are Impaired.

**Class 4.   Allowed General Unsecured Claims**

(a)     Description.  Class 4 consists of the Allowed General Unsecured Claims including any Allowed Rejection Claims.  The Debtors reserve the right to object to all General Unsecured Claims.

(b)     Treatment.  Except to the extent that the holder of an Allowed Class 4 Claim has been paid prior to the Effective Date, or agrees to a different treatment, in full satisfaction, settlement and release of their respective Allowed Claims, beginning on thirty (30) days after the Effective Date, the holders of Allowed Class 4 Claims shall receive Pro Rata distributions consisting of 25% of the Debtors' net operating income, on a pro-rata quarterly basis, until such claims are paid in full.  Any remaining unpaid balance of an Allowed Class 4 Claim at the time of the LIHTC Closing shall be paid in full within thirty (30) days of the LIHTC Closing.

(c)     Impairment.  The Class 4 Claims are Impaired.

**Class 5.  Allowed Equity Interests**

(a)     Description.  Class 5 consists of Equity Interests.  Equity Interests consist of any share of preferred stock, common stock, partnership interest or other instrument

9

evidencing an ownership interest in the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

        (b)     <u>Treatment.</u>  All Equity Interests of the Debtors shall revest in the holders of such Equity Interests to the same amount and extent as existed prior to the filing of this Case.  No holder of an Equity Interest shall receive or retain any property, distribution, or economic value on account of such Equity Interest unless and until all Claims senior to such Equity Interests have been satisfied in full in accordance with the Bankruptcy Code.

        (c)     <u>Impairment</u>.  The Class 5 Equity Interests are Impaired.

## D.      Distributions Under the Plan

1.      Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Debtor(s) to the holder of each Allowed Claim, in the manner provided for in the Plan and Confirmation Order, at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Confirmation Date, or other date as ordered by the Court, unless the Debtor(s) has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

2.      Except as otherwise provided for in the Plan and Confirmation Order, any payment of Cash made by the Debtor(s) pursuant to the Plan shall be made on a quarterly basis by check drawn on a domestic bank or by wire transfer.

3.      Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

4.      No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Debtor(s) to any holder of a Claim unless a request therefore is made in writing to the Debtor(s), as applicable, or unless the Distribution is a final Distribution.

5.      When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in the Plan.

6.      In the event that any distribution to any holder is returnable as undeliverable, the Debtor(s) shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Debtor(s) has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided that any distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

7.      Unless otherwise provided herein, all initial distributions and deliveries shall be made on the Effective Date.  Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

8.      At the close of business on the Confirmation Date, or other date ordered by the Court, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtor(s) shall have no obligation to recognize any transfer of any Claims occurring after the Confirmation Date, or other date ordered by the Court; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Confirmation Date, or other date ordered by the Court, and prior to the Effective Date.  The Debtor(s) shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Confirmation Date, or other date ordered by the Court.

**E.      Procedures for Allowance or Disallowance of Disputed Claims**

**1.      Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims**

Any and all objections to any claim must be filed within fourteen (14) days prior to the Confirmation Hearing, or as otherwise ordered by the Court (the "Objection Deadline"), or with respect to rejection claims, within fourteen (14) days of their filing (the "Objection to Rejection Claims Deadline").  In the event that the Debtor(s) settles any claim objection, the Debtor(s) may seek approval by submitting an Agreed Order in a form acceptable to the Debtor(s) and the holder of the Disputed Claim.  In the event that the Debtor(s) and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtor(s) will set the contested matter for hearing before the Bankruptcy Court and will provide all interested parties with notice of the date set.

**2.      Unclaimed Funds**

If any distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder.  A distribution of funds is unclaimed, if, without limitation, the holder of an Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules, the Amended Schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.  Any funds unclaimed shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account to be paid over to the Reorganized Debtors pursuant to section 347(b) of the Bankruptcy Code.

**3.      No Distribution Pending Allowance and Establishment and Maintenance of Reserve**

Notwithstanding any other provision of the Plan, if any portion of a Claim is Disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless

and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

On the initial Distribution Date pursuant to the terms of the Plan and each subsequent Distribution Date, the  Reorganized Debtors shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtor(s) or the Court in accordance with Section 6.07 of the Plan (the "Disputed Claims Reserve").

### 4.      Distributions Upon Allowance of Disputed Claims

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtors upon the subsequent Distribution Date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

### F.      Executory Contracts and Unexpired Leases

The Code grants the Debtor(s) the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to §§ 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor(s) and any Person shall be deemed rejected by the Reorganized Debtors as of the Effective Date, except for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the Balloting Deadline; *provided, however*, that the Debtor(s) or Reorganized Debtors shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtor(s) or Reorganized Debtors shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtor(s) or the Reorganized Debtors that such document is an executory contract or an unexpired lease or that the Debtor(s) has any liability thereunder.

Notwithstanding the foregoing, if not already assumed prior to the Confirmation Date, the Debtor(s) intends to assume the following:

1. **All residential leases (more specifically identified on Schedule G)**

2. **Ground Lease Agreements with Housing Authority of Atlanta, Georgia.**

3. **Reciprocal Easement Agreements between Housing Authority of Atlanta, Georgia, CCH John Eagan I Homes, L.P., and CCH John Eagan II Homes, L.P.[4]**

**G.   Amendment, Modification or Revocation of the Plan**

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor(s) at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Plan Proponent shall have complied with section 1125 of the Code.  The Plan may be altered, amended or modified by the Plan Proponent at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Plan Proponent, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims, insofar as it does not materially adversely affect the interests of holders of Claims, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

**H.   Means for Implementation and Effect of Confirmation of Plan**

1. **Proposed Restructuring Transaction and LIHTC Transaction**

**A. Overview of the Sale and Recapitalization**

The Plan contemplates a comprehensive restructuring of the Debtors' existing indebtedness through a strategic sale of the Phase I and Phase II apartment buildings (collectively, the "Property"). To maximize value for the estates and ensure the continued viability of the affordable housing components, the Debtors (or their designated agents) shall form two (2) new limited partnerships (the "Purchaser Entities").

The Purchaser Entities will seek to recapitalize the Property through the federal Low-Income Housing Tax Credit ("LIHTC") program under Section 42 of the Internal Revenue Code and the issuance of tax-exempt private activity bonds. This "4% LIHTC/Bond" execution is designed to provide the necessary capital to satisfy allowed claims, fund required reserves and facilitate the long-term preservation of the Property's affordable units. The Debtors intend to monetize the LIHTCs by admitting an investor limited partner into the Purchaser Entities (directly

---

[4] Copies of these documents are available for review upon request to the Debtors' counsel.

or through a customary multi-tier syndication structure) in exchange for equity proceeds priced at then-prevailing market terms.

### B. Regulatory Framework and Georgia DCA Compliance

The transaction is subject to the rules and regulations of the Georgia Department of Community Affairs (DCA), which serves as the state's housing credit agency. The DCA, acting through its housing finance division, administers the LIHTC program pursuant to Georgia's Qualified Allocation Plan (the "QAP").  The DCA also administers the State's private activity bond volume cap allocation process through its Bond Allocation Program. The Purchaser Entities will submit applications for an allocation of 4% LIHTCs and a corresponding volume cap allocation for tax-exempt bonds. Because the Property consists of two distinct phases, the Debtors observe that DCA may require separate applications or staggered allocation cycles. While the Debtors intend to pursue a concurrent execution for both Phase I and Phase II, the timeline remains subject to the QAP and administrative discretion.

The Debtors anticipate that the Purchaser Entities will be structured to satisfy (i) IRC § 42 requirements applicable to LIHTC ownership entities (including allocation and delivery mechanics), (ii) bond and securities law requirements applicable to Private Activity Bond ("PAB") financing and LIHTC equity syndication, and (iii) requirements imposed by Georgia DCA under the QAP and related guidance, including underwriting, threshold eligibility, and compliance monitoring obligations.  The transactions as contemplated herein shall not be taxed under any law imposing a stamp tax or similar tax, as provided in Section 1146 of the Bankruptcy Code.

The Purchaser Entities are expected to obtain one or more series of tax-exempt multifamily housing bonds, the proceeds of which will finance a portion of acquisition and/or rehabilitation costs. Such bonds generally require: (i) a valid volume cap allocation, (ii) compliance with federal tax requirements for qualified residential rental projects, and (iii) satisfaction of issuer, borrower, trustee, credit enhancement/underwriting, disclosure, and closing conditions typical of the municipal bond market (including bond counsel opinions and tax certifications).

### C. Projected Implementation Timeline

The Debtors have established the following milestones for the LIHTC application and disposition process, subject to the availability of DCA funding cycles and administrative deadlines:

1.    Formation of Purchaser Entities: Prior to July 2026.

2.    Pre-Application Submission: On or before July 24, 2026, the Purchaser Entities shall submit a pre-application to DCA for 4% LIHTCs and tax-exempt bond financing.

3.    Final Application Submission: On or before September 25, 2026, the Purchaser Entities shall submit a full and final application to DCA, including all required third-party reports (e.g., market studies, environmental assessments, and capital needs assessments). According to DCA, the 4% tax credit Letter of Determination (LOD) is typically issued within 2–4 weeks.

14

4.      Contingency for Allocation Cycles: The Debtors acknowledge that the aforementioned dates may be modified based on changes to the DCA calendar or requirements for separate Phase I and Phase II submissions.

The foregoing dates reflect the Debtors' current, good-faith anticipated filing schedule; however, the dates/deadlines may change based on (i) the DCA's application calendar, forms, portals, and procedural requirements, (ii) issuance/volume cap availability and reservation timing under the DCA's Bond Allocation Program, and (iii) any changes to applicable QAP requirements or agency guidance.

### D. Syndication of Tax Credits and Project Financing

Upon receipt of a Reservation of Credits (the "Reservation") from DCA, the Debtors shall commence a commercially reasonable marketing process to identify a LIHTC investor (the "Equity Investor"), which may include: (i) distributing an offering/teaser and due diligence package, (ii) soliciting bids or proposals from multiple syndicators/investors, (iii) negotiating an equity commitment (including adjusters, guarantees, and funding schedule), and (iv) coordinating tax counsel, investor counsel, bond counsel, underwriter/lender, and issuer documentation to reach a financeable and closeable structure.

1.      Equity Syndication: The Purchaser Entities will enter into a Limited Partnership Agreement with the Equity Investor, whereby the Investor will provide equity capital in exchange for the 99.99% allocation of federal LIHTCs. The pricing and terms of such syndication shall be based on then-prevailing market conditions for Georgia 4% credits. Following (or conditioned upon) the DCA's approvals/reservations and satisfactory bond structuring, the Debtors intend to "market" the LIHTCs in a commercially reasonable manner by soliciting pricing indications and term sheets from LIHTC equity investors and/or syndicators. The customary approach is to admit an investor limited partner (or upper-tier investor) that contributes equity in installments tied to achievement of transaction milestones (e.g., closing, construction/rehab progress, receipt of IRS Forms 8609, stabilized operations, and/or cost certification). Equity pricing is market-sensitive and depends on credit yield requirements, perceived compliance/lease-up risk, construction risk, and broader capital markets conditions.

2.      Debt Financing: Any additional debt not provided through the tax-exempt bond issuance (including subordinate soft loans, seller financing (if any), bridge loans, or other sources) will be obtained, if available, on then-current market terms and subject to lender underwriting, appraisal, environmental, and feasibility requirements.

3.      Closing and Disposition: The sale of the Property to the Purchaser Entities and the associated financial closing (the "LIHTC Closing") is projected to occur on or before December 31, 2027.

**E. Escrow for Capital Expenditures and Necessary Improvements**

In order to effectuate the LIHTC Transaction and the terms of this Plan, senior secured creditor Bridgeview Funding, LLC has escrowed $1.2 million, pursuant to the AHA Settlement Agreement.  This money will be used to complete any necessary repairs to the Property in excess of amounts that can be funded from the income of the Debtor(s).

**F. Feasibility and Risk Factors**

The success of this strategy is contingent upon (i) the successful allocation of tax credits and bonds by DCA; (ii) the Debtors' ability to secure an Equity Investor at a viable price point; and (iii) the availability of supplemental debt financing. Should the Purchaser Entities fail to secure a Reservation by the end of the 2026 allocation cycle, the Debtors reserve the right to seek an extension of the milestones or pivot to an alternative disposition strategy as set forth in the Plan.

The Debtors disclose that the Bond/4% LIHTC Structure is highly regulated and subject to multiple layers of third-party approvals and market conditions, any of which may materially affect timing, economics, or feasibility:

1.      Georgia DCA/QAP compliance risk. The DCA may deem an application incomplete, non-compliant, or otherwise ineligible under threshold or competitive review requirements applicable to 4%/Bond applications (including any project-specific documentation or policy requirements imposed by the QAP or subsequent agency guidance).

2.      Volume cap availability and bond allocation timing. Even if a transaction is otherwise financeable, the ability to issue PABs depends on receiving a volume cap allocation and satisfying the issuer's and the DCA Bond Allocation Program's procedural and timing requirements. Volume cap is finite and subject to competing demands, and allocation calendars/procedures may change.

3.      Phase separation and allocation cycle timing. If Phase I and Phase II must be underwritten, approved, or closed in different cycles (or require separate bond issuances), the transaction may require staged closings, interim financing, or revised milestones, potentially affecting the Plan's projected timeline and costs.

4.      LIHTC equity pricing and investor terms. Investor demand, credit pricing, adjusters, and guarantee requirements fluctuate with interest rates, corporate tax considerations, and market sentiment. A decrease in LIHTC pricing or an increase in required guarantees/reserves could create a financing gap or require restructuring.

5.      Interest rate, credit enhancement, and remarketing risk. Tax-exempt bond executions are sensitive to market rates and may require credit enhancement, reserves, and/or investor-acceptable security features. Adverse market conditions may reduce proceeds, increase debt service, or impair feasibility.

6.      Construction/rehabilitation, lease-up, and compliance risk. The economics of a LIHTC transaction depend on the ability to complete scope within budget and

schedule, meet placed-in-service and cost certification requirements, achieve stabilized occupancy, and maintain ongoing compliance with federal and state affordability restrictions. Noncompliance may result in credit loss, recapture risk, enforcement actions, or investor remedies.

7.      Regulatory change risk. Federal or state legislative, regulatory, or policy changes (including changes to QAP requirements, allocation procedures, underwriting standards, or bond/LIHTC eligibility interpretations) could affect the feasibility or timing of the proposed transaction.

Nonetheless, regardless of the above identified risk factors, the Debtor(s) are confident that they will be able to obtain the Reservation and complete the LIHTC Transaction..

**I.      Discharge of the Debtors**

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtors and the Debtors in Possession, the Estate, any of the assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against the Debtors, and Equity Interest in the Debtors shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtors, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtors and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

**J.      Injunction Related to Discharge**

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtors, or Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or*

*Equity Interest.  Such injunctions shall extend to successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.*

**K.      Injunction Against Interference with the Plan**

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

**L.      Votes Solicited in Good Faith**

The Plan Proponent has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

**1.      Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**8.      The Disbursing Agent**

Except as otherwise provided in the Plan or the Confirmation Order, upon Confirmation of the Plan, all property of the Estate will re-vest in the Reorganized Debtors.  The Disbursing Agent shall be the person responsible for making the distributions required pursuant to the Plan.  The Disbursing Agent shall be:

Yashpal Kakkar
8895 North Military Trail
Suite 201E
Palm Beach Gardens, FL 33410
Tel: (561) 627-7988

**M.      Conditions Precedent to Effectiveness of Plan**

The Plan shall not become effective unless and until the conditions set forth in Section 9.01 of the Plan shall have been satisfied or waived.

**N.      Retention of Jurisdiction**

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

18

(a)      to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b)      to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)      to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor(s) or any other party in interest with standing to do so, pursuant to §§ 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)      to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)      to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)      to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by § 1142 of the Code;

(h)      to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)      to hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331, and 503(b) of the Code;

(j)      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)      to recover all Assets of the Debtor(s) and Property of the Estate, wherever located;

(l)      to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)      to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)      to hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under § 505(b) of the Code of the tax liability of the Debtor(s) for all taxable periods through the

Effective Date for all taxable periods of the Debtor(s) through the liquidation and dissolution of such entity);

(p)      to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)      to hear any other matter not inconsistent with the Code; and

(r)      to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtors under applicable environmental laws.

## O.    Payments Within 90 Days of the Petition Date and other Avoidance Actions

As of the Effective Date, pursuant to Section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtor(s) and Debtors in Possession, including, without limitation, Actions under Sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become Assets of the Reorganized Debtors, and, subject to an order of the Bankruptcy Court providing otherwise, the Reorganized Debtors shall have the authority to commence and prosecute such Actions for the benefit of the Estate.  Specifically, the Reorganized Debtors shall continue to prosecute any Action pending on the Effective Date.

Further, section 547 of the Code enables a debtor in possession to avoid transfers to a Creditor, based upon an antecedent debt, made within ninety (90) days of the Petition Date, which enables the Creditor to receive more than it would under a liquidation.  Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the Creditor provided the debtor with new value.

Prior to Confirmation, the Debtor(s) shall analyze payments made by the Debtor(s) to creditors within ninety (90) days (or in the case of insiders, one year) before the Petition Date to determine on a final basis which payments may be avoidable as preferential transfers under the Code and, if appropriate, prosecute such actions.

## P.    Post-Confirmation Date Service List

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall continue to be effective, and further notices will be sent to such Entities.

## V.     <u>CONFIRMATION OF THE PLAN</u>

**A.     Solicitation of Votes**

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Allowed Claims in Class 1, Class 2, Class 3, Class 4 and Class 5 are impaired and entitled to vote on the Plan. An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider. A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

**B.     Disclosure Hearing and Confirmation Hearing**

The Court shall schedule the Disclosure Hearing to consider approval of this Disclosure Statement and the separate Confirmation Hearing to consider confirmation of the Plan at the United States Bankruptcy Court for the Southern District of Florida, located at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Dr., Room 801, Courtroom A, West Palm Beach, Florida 33401. The Disclosure Hearing and/or the Confirmation Hearing may be adjourned from time to time without notice except as given at the Disclosure Hearing or the Confirmation Hearing or any subsequent adjourned Disclosure Hearing or Confirmation Hearing. The Court shall set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the confirmation of the Plan.

Any objection to approval of this Disclosure Statement or confirmation of the Plan must be in writing, specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim. Any such objection must be filed with the Court, and serviced so that it is received by the Court and the following parties on or before the deadline set by the Court (service via Email on the below counsel is sufficient):

> Landau Law, PLLC
> Attn: Philip J. Landau, Esq.
> Attorneys for the Debtors
> 3010 North Military Trail, Suite 318
> Boca Raton, Florida 33431
> Phone: (561) 443-0808
> Email: plandau@landau.law and dlocascio@landau.law
>
> -and-
>
> Office of the U.S. Trustee
> 51 SW First Avenue, Room 1204
> Miami, FL 33130
> Phone: (305) 536-7285

Attn: Martin Ochs, Trial Attorney
Email: martin.p.ochs@usdoj.gov

## C.    Confirmation Standards

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the Bankruptcy Code.  Section 1129 of the Bankruptcy Code also imposes requirements that with respect to each class of claims, such class has accepted the plan or such class is not impaired under the plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims that is impaired under the Plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met.  The Plan Proponent believes that the Plan satisfies all of the requirements for confirmation for the reasons stated below.

## VI.    FUNDING AND FEASIBILITY OF THE PLAN

## A.    Risks to the Creditors

The Plan Proponent does not anticipate that there are any significant federal tax consequences the Plan would have on Creditors.  As stated above, the Disclosure Statement will not be construed to be advice on the tax, securities or other legal effects of the Plan.  Each Creditor should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

## B.    Best Interests Test and Liquidation Analysis

With respect to each impaired Class of Claims, confirmation of the Plan requires that each holder of an Allowed Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor(s) was liquidated under Chapter 7 of the Bankruptcy Code on such date.  To determine what holders of Claims of each impaired Class would receive if the Debtor(s) were liquidated under Chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtor(s)'s assets and properties in the context of a Chapter 7 liquidation case and the assets were liquidated by a Trustee in bankruptcy.  The cash amount that would be available for satisfaction of Claims would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of the Debtor(s), augmented by the unencumbered cash held by the Debtor(s) at the time of the commencement of the liquidation case.

The Debtor(s)' cost of liquidation under Chapter 7 would include the fees payable to the Chapter 7 trustee, as well as those fees that might be payable to other professionals that such a trustee might engage.  The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 case, including any unpaid expenses incurred by the Debtor(s) during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims.

22

The Plan Proponent believes that each holder of an Allowed Claim will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor(s) was liquidated under Chapter 7 of the Bankruptcy Code on such date.

**C.      Present Financial Condition**

Debtor CCH I's monthly operating report for the period of January 1, 2026 through January 31, 2026 [ECF No. 85] indicates that as of January 31, 2026, it had funds totaling $50,280.63.  For 2025, CCH I had a gross revenue of approximately $1.5 million and for 2024 it has a gross revenue of approximately $2.0 million. For 2025, CCH II had a gross revenue of approximately $1.35 million and for 2024 it has a gross revenue of approximately $1.5 million.

**D.      Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization.

The Debtors believe that they will be able to provide for all payments required pursuant to the Plan and will be able to perform all of their obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## CONCLUSION

For all the reasons set forth herein, the Debtors believe that confirmation and consummation of the Plan is preferable to all other alternatives.  Consequently, the Debtors urge all eligible holders of Impaired Claims to vote to **accept** the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Court.

**DATED: March 9, 2026**

        **DEBTORS IN POSSESSION:**

        **CCH John Eagan I Homes, L.P.**
        **CCH John Eagan II Homes, L.P.**


            */s/ Yashpal Kakkar*
        Yashpal Kakkar, Authorized Officer

23

**ATTORNEY CERTIFICATION**

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service on March 9, 2026.

Respectfully Submitted,

**LANDAU LAW, PLLC**
Counsel for the Debtors
3010 N. Military Trail, Suite 318
Boca Raton, Florida 33431
Telephone: 561-443-0808
Email:  plandau@landau.law

By:  */s/ Philip J. Landau*
       Philip J. Landau, Esq.
       Florida Bar No.: 0504017

## EXHIBIT A

Chapter 11 Plan

[*See* ECF No. 88]