**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

| | |
|---|---|
| CCH John Eagan I Homes, L.P., | Case No.: 25-24569-MAM |
| | (Jointly Administered) |
| | |
| CCH John Eagan II Homes, L.P., | Case No.: 25-24571-MAM |
| | Chapter 11 |
| Debtors. | |

_____/

**MOTION TO AUTHORIZE PAYMENT OF**
**RECEIVER AND RECEIVER'S EXPENSES PURSUANT TO SECTION 543(c)**

Receiver Joel Murovitz, by and through his undersigned counsel and pursuant to 11 U.S.C. § 543(c), hereby requests an order from the Court providing authorization for the Receiver's previous payment of compensation and Receivership expenses.  In support the Receiver states as follows:

**Relevant Facts**

1.      At the behest of secured creditor, The Housing Authority of City of Atlanta, Georgia ("**Atlanta Housing**"), on October 27, 2025, the Superior Court of Fulton County, Georgia (the "State Court") appointed Joel Murovitz (the "**Receive**r") of GlassRatner Advisory & Capital Group, LLC ("**GlassRatne**r") as receiver of the Magnolia Park Apartments, Phases I and II, located at 60 Paschal Blvd., NW. Atlanta, Georgia 30314 (the "**Real Property**").  The State Court's order has been filed in this Bankruptcy Case at Docket No. 23-3.

2.      In its order, the State Court, among other things, authorized the Receiver to: (a) take possession of the Real Property and all rents, accounts, income, profits and cash on hand (together, the "**Property**"); (b) manage, operate, and maintain the Property; (c) select, hire, and enter into contracts with a property manager and necessary contractors; (d) prosecute/defends

legal proceedings involving the receivership estate; (e) employ counsel; and (f) receive reasonable compensation and expense reimbursement.

3.     Under the compensation scheme agreed to by the parties, the Receiver was entitled to a $7,500 takeover fee, $7,500 per month in compensation, and reimbursement of necessary costs and expenses.

4.     Following entry of such order by the State Court, the Receiver hired MMG Management, LLC, *d/b/a* Meridian Management Group ("**MMG**") as the property manager with respect to the Property and hired TSP Security Services LLC ("**TSP**") to provide security services with respect to the Real Property.  Attached hereto as **Exhibits A** and **B**, respectively, are the Receiver's property management contract agreement with MMG and its security contract with TSP.

5.     On December 10, 2025, the above-captioned Debtors each filed voluntary chapter 11 petitions, thereby initiating the above-captioned jointly administered bankruptcy case.

6.     Therefore, pursuant to 11 U.S.C. §§ 543(a) and (b), the Receiver would have ordinarily been required to turn over the Property to the Debtors and to refrain from all disbursements other than those necessary to preserve the Property.

7.     However, on December 13, 2025, Atlanta Housing filed its *Motion to Excuse Turnover Pursuant to Section 543 of the Bankruptcy Code and Request for Expedited Hearing* [Dkt. No. 23] (the "**Turnover Excuse Motion**"), wherein Atlanta Housing requested, pursuant to 11 U.S.C. § 543(d), that the Receiver be excused complying with 11 U.S.C. §§ 543(a) and (b) and otherwise be excused from turning over the Property to the Debtors.

8.      Based on the pendency of the Turnover Excuse Motion, the Receiver has remained in possession of the Property and has continued to perform the tasks assigned to him by the State Court regarding the Property.

9.      Moreover, post-petition, but prior to his retention of the undersigned counsel, the Receiver made the following payments (the "**Payments**") to MMG and GlassRatner, which are further detailed on **Exhibits C** and **D**:

     a.  MMG -- $116,448.83 -- for pre and post-petition payroll expenses and fees;

     b. GlassRatner -- $31,179.74 – for pre and post-petition fees and expenses; and

     c. TSP -- $109,131 -- for pre and post-petition fees.

## Relief Requested and Argument

10.      Through this Motion, the Receiver requests that the Court enter an order authorizing the Payments.

11.      Pursuant to 11 U.S.C. §§ 543(c)(1) and (2), it is proper for the Court to "protect all entities [such as MMG] to which [the Receiver] has become obligated with respect to the [Property]," and to "provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by [the Receiver][.]"  Such obligations, compensation, costs, and expenses, including "prepetition debts incurred during the receivership," are subject to payment, upon Court approval, during the Bankruptcy Case "as soon as practicable[,]" *see In re Madison Avenue Ltd. Partnership*, 213 B.R. 888, 891 (Bankr. S.D.N.Y. 1997) and are entitled to administrative expense claim priority pursuant to 11 U.S.C. §§ 543(c) and 503(b)(3)(E).[1]

---

[1]   While section 503(b)(3)(E) specifies administrative priority for the compensation/expense claims of _superseded_ custodians, "[i]t makes absolutely no sense to put the . . . obligations of a receiver on a worse footing if a receiver is excused from turnover than if he is not." *See In re Madison Avenue Ltd. Partnership*, 213 B.R. 888, 898-99 (Bankr. S.D.N.Y. 1997).

12.     Here, the Payments were: (a) pursuant to contracts with MMG and TSP that the Receiver was obligated on and for which MMG and TSP provided necessary property management and security services; and (b) for the Receiver's reasonable compensation and necessary expenses under the State Court's previously approved Receiver compensation scheme.

13.     Accordingly, the Receiver requests, pursuant to 11 U.S.C. §§ 543(c)(1) and (2), that the Court enter an order authorizing the Payments previously made by the Receiver to MMG, TSP, and GlassRatner.

14.     Moreover, the Receiver submits that the $225,579.83 in payments to MMG and TSP for management and security fees and expenses were absolutely necessary to preserve the Property pursuant to 11 U.S.C. § 543(a).

15.     Finally, due to the pendency of the Turnover Excuse Motion, wherein Atlanta Housing requests, pursuant to 11 U.S.C. § 543(d), that the Receiver be excused from complying with 11 U.S.C. § 543(a), the payments to both MMG *and* GlassRatner were proper.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order authorizing the Receiver's previous respective payments of $116,448.83, $31,179.74, and $109,131 to MMG, GlassRatner, and TSP.

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
Counsel for the Receiver
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: ependergraft@slp.law

By: */s/ Eric Pendergraft*
    Eric Pendergraft
    Florida Bar No. 91924

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Filing by CM/ECF to all parties registered to receive such service on March

23, 2026.

*/s/ Eric Pendergraft*

"EXHIBIT A"

# MERIDIAN MANAGEMENT GROUP
# PROPERTY MANAGEMENT AND LEASING AGREEMENT

**THIS PROPERTY MANAGEMENT AND LEASING AGREEMENT** is made this day of October 28, 2025, by and between GlassRatner Advisory & Capital Group, LLC, a Delaware Limited Liability Company, hereinafter referred to as "RECEIVER") and MMG Management*, LLC,* a Georgia Limited Liability Corporation (hereinafter referred to as "AGENT").

**WITNESSETH:**

 **WHEREAS**, Pursuant to that certain Order Appointing Receiver, entered October 29, 2025 (the "Receiver Order"), the Superior Court of Fulton County, Georgia (the "Court"), in Civil Action No. 25-CV-12859, appointed Receiver as receiver over that certain real and personal property more particularly described in the Receiver Order (the "Receivership Estate").  The Receivership Estate includes the Property (as defined herein);

 **WHEREAS,** Receiver desires to retain the services of AGENT as manager of the Property with responsibilities for managing, operating, maintaining, and servicing the Property on behalf of Receiver, subject to the terms and conditions of this Agreement; and

 **NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained, and for other consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, each intending to be legally bound, hereby agree as follows:

1. **Property.**  Receiver is the lawful Receiver of that certain property referred to as **Magnolia Park Apartments** at 60 Paschal Boulevard, NW, Atlanta, Georgia 30314 (hereinafter referred to as the "Property").

2. **AGENT.**  On the terms and conditions set forth herein, Receiver appoints AGENT as manager of the Property with the responsibilities and upon the terms and conditions outlined in this Agreement, and Manager hereby accepts such appointment.

3. **Term.**  The term of this Agreement shall be for a period of one (1) year, beginning October 28, 2025, and thereafter shall automatically renew itself for successive one-month periods; provided, however, that at the conclusion of the initial term and thereafter, either party may terminate this Agreement by giving 30 days prior written notice pursuant to Section 11.

(a)   Notwithstanding the foregoing, RECEIVER may terminate this Agreement at any time upon written notice to AGENT upon the occurrence of any of the following:
 (i) In the event of dishonesty, gross negligence or flagrant mismanagement by AGENT or its failure to perform duties and responsibilities specified herein not promptly cured upon request therefore.
 (ii)  If a petition in bankruptcy or receivership shall be filed by or against AGENT and, if involuntary, not dismissed within sixty (60) days thereof, or if AGENT makes an assignment for the benefit of creditors or files a petition for reorganization.
 (iii)  At any time with no penalty, by giving AGENT not less than 30 days' notice.
 (iv) The approval of Agent by any holder of a first lien loan secured by the Property (Lender") is a condition precedent to the effectiveness of this Agreement. Therefore, if Receiver's Lender does not approve Agent, this Agreement shall be immediately terminated and of no force or effect.
 (v)  Immediately with the court-ordered dismissal of the Receivership.

1

(b.) Further notwithstanding the foregoing, AGENT may terminate this Agreement, with or without cause, at any time with no penalty by giving 30 days prior written notice.

4. **<u>Other Properties.</u>**  AGENT agrees to manage the Property in a professional, diligent and commercially reasonable manner; provided, however, Agent shall not be required to devote itself exclusively to the management of the Property.

5. **<u>Authority and Duties of AGENT.</u>**  RECEIVER expressly authorizes and empowers AGENT and AGENT agrees, during the period of this Agreement:

(a) To procure and qualify tenants and to negotiate and sign as RECEIVER'S agent leases for the Property. AGENT'S leasing activities include inspecting property, market pricing, advertising copy and placement, receiving calls and screening prospects, showing property, credit check of applicants and executing and distributing leases in form selected by AGENT.  Lease price shall be determined by RECEIVER in good faith and shall be reasonably set.

(b) Agent agrees to operate the property during standard operating hours acceptable to Receiver and may include Saturdays and/or Sundays if agreed to by Receiver.

(c)  To collect all rentals and all other income from the Property and endorse and deposit all checks or drafts in payment thereof in an agency banking account.  All amounts collected by AGENT shall be kept in a separate bank account owned by the RECEIVER and at all times segregated from AGENT'S own funds.  Nothing in this Agreement shall be deemed a guarantee by AGENT of the payment or rent by the tenants.  AGENT shall not be held liable in the event of bankruptcy or failure of a depository.

(d) To collect a security deposit in an amount to be agreed on by RECEIVER to be held in an escrow account of RECEIVER and disbursed to RECEIVER or the tenant of the Property in accordance with the provisions of the lease of the Property and applicable law.

(e)  To create an annual operating budget, including all anticipated income and expenses related to the property, which shall be approved by the RECEIVER.  Said budget shall be presented to RECEIVER for approval no later than December 1 of the prior year.  During the initial calendar year of this Agreement, budget shall be presented to RECEIVER no later than 30 days following the execution of this Agreement.  Absent express written approval of budget by RECEIVER, AGENT shall require approval for all expenditures.

(f)  Agent may make capital improvements or repairs for the Property in accordance with the Approved Budget.  Projects costing in excess of $5,000.00 shall require the prior written approval of Receiver (excluding amounts in an approved budget for tenant improvements under approved leases), and the payment of a construction management fee to the Agent as agreed to should RECEIVER award construction service projects to AGENT as detailed by section (j) below.

2

(g)  To make the usual and ordinary repairs and purchase the necessary supplies for the operation of the Property and pay all bills incurred from the proceeds of said rental and other collections. To submit for prior approval by RECEIVER any expenditure which would cause any line item in said budget to exceed 5% of the related line item in the budget, except for emergency repairs necessary to:

(i). Protect the property from damage, or:

(ii). Maintain services to tenants as called for by their tenancy, or;

(iii). Comply with local government regulations

(h)  To direct the purchase of necessary supplies, to make contracts for electricity, gas, water, telephone, refuse disposal, vermin extermination and for any other utility, service, or repair which AGENT shall reasonably consider advisable, in accordance with the budget created by AGENT and approved by RECEIVER.  Notwithstanding, AGENT may not execute any agreement with any vendor, supplier, contractor, or service provider which cannot be terminated with less than 45 days notice without approval.

(i)  To pay out of the rent collected, disbursements necessary for operation and maintenance of the Property, provided, that AGENT is authorized to first pay out of available funds all charges against the Property incurred in the name of and on the credit of AGENT and then apply the remaining funds to the payment of obligations incurred by RECEIVER including, but not limited to, utilities, management fees, or pay any other obligations of RECEIVER hereunder when funds are available for said payments.

(j)  After deducting all authorized expenses and reserves from the gross collections from the Property, the net amount of all funds collected for RECEIVER'S account shall be remitted monthly by AGENT to RECEIVER according to the directives from the RECEIVER, along with a statement showing all receipts and disbursements for the month together with supporting vouchers.

(k)  To indemnify and hold RECEIVER harmless against any claims which may be made against RECEIVER and which are solely attributable to the gross negligence or willful misconduct of AGENT.

(l)   To process investor distributions and lender draw requests as the Receiver requests and directs.

6. **Duties and Obligations of Receiver:**

Receiver hereby:

(a)  Appoints AGENT its true and lawful attorney in fact to collect all rents due by tenants in the Property, and to take such action as may be necessary to enforce compliance by tenants with the provision of any leases executed for the Property or any part thereof and, when expedient, to settle, compromise or release such actions.  AGENT is not authorized to practice law.  Where in the discretion of AGENT legal assistance is needed for enforcing the collection of rent or eviction of a tenant, legal assistance shall be obtained through counsel and legal action undertaken shall be in RECEIVER'S name only.  All such legal expenses, including that of counsel, shall be borne by RECEIVER.

(b)  Authorizes AGENT to display its customary management and "for rent" signs on the Property and shall pay the cost of all advertising which specifically and exclusively benefit the Property, and in accordance with the budget created by AGENT and approved by RECEIVER.

3

(c) Agrees to at all times maintain sufficient funds in the property trust account to enable AGENT to pay all obligations of the Property in a timely manner. In instances where collections are projected to be insufficient or will not be received in time to satisfy this requirement RECEIVER shall promptly provide AGENT with the necessary funds in advance upon notification by AGENT. AGENT shall not be required to advance funds for RECEIVER'S account, and should a deficit occur therein, upon notification by AGENT the RECEIVER shall forthwith remit to AGENT sufficient funds to remove the deficiency. RECEIVER agrees to reimburse AGENT immediately for any money in fact advanced by it for which the Property account is insufficient and to pay AGENT 1.5 percent per month or a minimum of $25.00 per month, whichever is greater, for the highest amount not reimbursed to AGENT within five (5) days of being notified of a negative balance in the account attributable to the Property. Furthermore, the RECEIVER is responsible for any outstanding accounts payable balances with vendors, and all such balances must be promptly settled upon the closure of the Property.

(d)   Agrees to fund and maintain adequate and appropriate insurance coverage for the Property, including Commercial General Liability Insurance, in an amount not less than Two million ($2,000,000) dollars for each occurrence with respect to the property and covering personal injury, property damage, and bodily injury (including death), which includes assault and battery coverage in the foregoing amount and shall not contain any firearm exclusion or pool exclusion or any other material exclusion. RECEIVER agrees to add AGENT as an additional insured under the insurance policy maintained by RECEIVER on the Property.  RECEIVER shall add AGENT as an additional insured effective as of the date of this Agreement and furnish AGENT original certificates of insurance or if requested, duplicate copies of policies evidencing that such insurance is in force as of the Effective Date. All policies providing for such coverage shall waive all the insurer's right of subrogation against AGENT and its affiliates and their respective employees, insurers, shareholders, and authorized agents. In addition, Receiver shall provide at least fifteen (15) days' written notice to Manager before any cancellation or change of coverage

(e)   Agrees to not pass to AGENT the RECEIVER'S responsibility to maintain an adequate and appropriate insurance coverage for the Property even though AGENT pays for these insurance policies out of the operating account for the property.  In addition, RECEIVER does not pass to AGENT the RECEIVER'S responsibility to pay the mortgage payments, condominium fees and taxes for the Property even though AGENT pays these items out of the operating account for the property.

(f)   Agrees to defend, protect, indemnify and hold harmless AGENT and its officers, directors, agents, employees, affiliated entities, subsidiaries, successors, assigns and representatives from any and all demands, liens, losses, liabilities, claims, causes of action, costs or damages relating to or resulting from AGENT'S management or leasing of the Property, or other roles or duties under this Agreement ("Indemnification Events"),  provided that such Indemnification Events are not attributable solely and exclusively to the willful misconduct or gross negligence of AGENT. RECEIVER shall be obligated under this Agreement to indemnify and defend AGENT in any lawsuit or legal proceeding to which AGENT is named as a party, and AGENT shall not be liable to RECEIVER for any fees of counsel subsequently incurred by RECEIVER with respect to such proceeding or threatened proceeding.

(g) To employ, discharge and pay from the proceeds of rental and other collections all employees or contractors necessary or desirable to be employed or engaged in the care, management or operation of the Property, and RECEIVER agrees to assume all expenses incurred. All employees shall be deemed the employees of RECEIVER and not the AGENT and AGENT may perform duties through its attorneys, agents or employees, and shall not be responsible for their acts,

4

defaults, or negligence if reasonable care has been exercised in their appointment and retention.

(h)  Acknowledges being notified of RECEIVER'S obligations under 42 U.S.C. 4582 (d) and that the presence of known led-based paint and lead-based paint hazards in the dwelling unit must be disclosed.  RECEIVER discloses that RECEIVER has knowledge of __ no knowledge of X reports or records pertaining to lead-based paint and/or led-based paint hazards in the housing.

7.  Any controversy or claim arising out of or relating to this Agreement or the breach thereof upon request of either party, shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the Award rendered may be entered in the highest court of any forum, state, or federal, having jurisdiction.

8.   **Property Violations.**

(a) If the Property is cited for any violation by any authority, AGENT, upon learning of said violations shall inform RECEIVER of the matter of said violations.  If RECEIVER fails or refuses to approve the necessary expenditures for the correction of the violations pursuant to the requirements of the citing authority, AGENT shall have the right to terminate this Agreement by giving written notice to RECEIVER at least fifteen (15) days prior to the effective date of the termination specified in such notice.  If AGENT fails or refuses to perform the necessary corrections within the time permitted by the citing authority, RECEIVER shall have the right to terminate this Agreement by giving written notice to AGENT at least fifteen (15) days prior to the effective date of the termination specified in such notice, provided that the necessary expenditures are either included within the budget or are otherwise approved by RECEIVER and fully funded by RECEIVER.

(b) If the Property or AGENT is cited for any violation by any authority, unless such violation is attributable solely and exclusively to the willful misconduct or gross negligence of AGENT, RECEIVER shall be responsible for payment of any and all fines, assessments or levies imposed by such authority against AGENT, and shall defend AGENT in any proceeding or threatened proceeding brought by such authority.  Any fees of counsel or other costs incurred with respect to the defense of AGENT in such proceeding or threatened proceeding shall be borne by RECEIVER. AGENT'S rights and RECEIVER'S obligations under this Section are in addition to and not in lieu of any and all rights and obligations arising under Section 4(e) and Section 6.

5

9. **Limitation of Management Scope; Security.**  It is understood and agreed by both parties that the services to be performed by AGENT under the terms of this Agreement are normal management services and if AGENT is required to perform services beyond the normal scope expected of a managing agent (such as but not limited to, code compliance, managing a transient facility, involvement of union negotiations, or real estate tax studies and/or protests) AGENT may make an additional charge for these services. Such charges shall be mutually agreed by RECEIVER and AGENT.

It is additionally understood and agreed that the services to be performed by AGENT do not include providing security services to the Property or ensuring the security of the Property. Notwithstanding the above, if RECEIVER provides written authorization for AGENT to identify and hire security services on behalf RECEIVER and provides funding for same, AGENT shall use AGENT'S best efforts to identify and hire security services for the Property in accordance with RECEIVER'S authorization.

10.   **Compensation of Manager.**  During the term of this Agreement or any renewals or extensions thereof, RECEIVER shall pay to AGENT a commission or fee at the rate prescribed in the fee schedule below:

Property Management Fee: Minimum of $8,000 or 4.0% of the monthly gross receipts.  In addition to the management fee, Receiver can expect the following fees assessed:

Entrata    Software:    $4.50unit/month
Learning and Education:  $125/month

Additional pass-through costs may be incurred in elections to implement other third-party software. (See Exhibit A – Technology Fees and Systems.) These elections can only be made by RECEIVER and will be confirmed in writing or in accordance with the RECEIVER approved budget, including but not limited to, postage, copying, courier charges, and other such costs that would be normally incurred in the operation of the Property at both the Property and corporate offices.

11.  **Notices.**  Any notice to be given hereunder shall be deemed given if deposited in the United States Mail, certified, return receipt requested, addressed as follows:
If to AGENT:

MMG Management, LLC
c/o Graham E. McDonald
O'Daniel McDonald, LLC
9040 Roswell Road, Suite 500
Atlanta, GA 30350

If to RECEIVER:

GlassRatner Advisory & Capital Group, LLC
3445 Peachtree Road, NE
Suite 1225
Atlanta, GA 30326
Attn: Joel Murovitz
jmurovitz@glassratner.com

6

or to such other address as the party to receive notice shall specify in the manner herein provided.

12.  **Enforceability; Waiver.**  The covenants, conditions, and agreements contained herein are binding on, and may be legally enforced by the parties hereto, their heirs, executed administrators, successors and assigns, respectively.  No waiver of any breach of any covenant, condition or agreement contained here shall be construed to be a waiver of that covenant, condition or agreement or of any subsequent breach thereof, or of this Agreement.

13.  **Transfer of Management.**  On termination of the Agreement for any reason, Agent shall cooperate with Receiver to accomplish an orderly transfer of the operation and management of the Property to a party designated by Receiver and deliver to Receiver (and to any other party as designated by Receiver) the following regarding the Property:

(a) A final accounting, reflecting the balance of income and expenses on the Property as of the day of termination to be delivered within thirty (30) days after the last month in which the Agreement is terminated.

(b) Any balance or monies of Receiver and tenant security deposits held by Agent regarding the Property to be delivered immediately upon such termination, and

(c) All original books and records, contracts, leases, drawings, plans, keys, supplies, receipts for deposits, unpaid bills, on and offsite inventory, data and all computer databases for all information related to the Property in Agent's computer database, and other papers or documents which pertain to the Property, immediately upon termination.

(d) Agent further agrees to do all other things reasonably necessary for a period of not more than thirty days after termination of this Agreement and work with the party designated by Receiver to cause an orderly transition of the management of the Property without detriment to the rights of Receiver or to the continued management of the Property, at no cost and expense to Agent.

(e) Upon termination of this Agreement, Receiver shall assume (i) the obligations of any contract or outstanding bill executed by Agent on behalf of and for the benefit of Receiver, and authorized by the terms of this Agreement to and on behalf of Receiver, and (ii) responsibility for payment of all unpaid bills and unpaid employee wages and benefits due and owing and authorized under this Agreement, prorated to the date of termination.

14.  **Examinations;Audits.**  Receiver reserves the right, on reasonable prior notice to Agent, to conduct examinations of (including making copies of) the books and records maintained for Receiver by Agent wherever located.  From time to time during normal business hours, Receiver reserves the right on reasonable prior notice to Agent to perform any and all additional audits it deems necessary, relating to the activities performed by Agent under this Agreement and relating to the Property.  Any such audit shall take place either at the Property of at any office of Agent.  If Receiver shall uncover any discrepancies in any of the books and records of the Property, Receiver shall notify Agent in writing of such discrepancies and Agent shall have ten (10) business days to provide Receiver with a written notice of the actions taken or to be taken to correct such discrepancies and the date by which the discrepancies shall be corrected.  Any and all audits shall be at the sole expense of Receiver.

7

15.   **Financing or Sale of Property.**   Agent shall cooperate with and provide reasonable transaction support to Receiver in connection with the financing or sale of the Property.  On receipt of written notice from Receiver of its decision to finance or sell the Property, Agent shall reasonably cooperate with Receiver's sale personnel,  Receiver's finance personnel, Receiver's attorneys, any broker engaged by Receiver for the sale or financing of the Property, and any prospective lender or buyer, but in no event shall Agent be obligated to expend any sums or incur any expenses other than de minimis in connection therewith.

16.  **Manager Reports.**   Agent shall prepare and present to Receiver the reports and financial statements set forth below in paragraph 16 (a) by the 15th day of each month.  Agent shall consult with Receiver to discuss the issues raised in the reports or other topics of concern to Receiver. On reasonable prior notice by Receiver, Receiver may require Agent to consult more frequently to discuss strategy, budget, or other issues.  Agent shall also provide any written reports, supporting documentation, and other information which may be reasonably requested by Receiver from time to time.  If and as requested by Receiver, Agent shall reforecast the Budget from time to time. Agent shall complete all accounting and record keeping for the current month by the 15th day of the following month.

   (a)  Monthly reporting documents must include but not be limited to the current rent roll, current month balance sheet, current month and year-to-date income statement, current month and year-to-date operating cash flow statement, and Aged Payables and Aged Receivables.

17.   **Entire Agreement.**   This Agreement constitutes the entire agreement of the parties with regard to the subject matter hereof and supersedes any prior oral or written agreement with regard thereto.

18.  **Choice of Law.**   This Agreement shall be construed and enforced in accordance with the laws of the State of Georgia.

19.  **Captions; Headings.**   All captions or headings contained in this Agreement are for convenience only and shall be deemed irrelevant in construing any provision of the Agreement.

20.  **Severability.**  If any part, term or provision of this Agreement is held to be unlawful, in conflict with any law or otherwise invalid, the remaining portion or portions of the Agreement shall be considered severable and not be affected by such determination, and the rights and obligations of the Parties shall be construed and enforced as if the Agreement did not contain the particular part, term or provisions held to be invalid or void.

21.  **Authority.**   The persons executing this Agreement on behalf of the Parties are duly authorized to act on behalf of such entities and hereby acknowledge their authority to do so.

22.  **Counterparts; Electronic Signatures.**   This Agreement may be executed in multiple counterparts by the Parties, each of which shall be deemed to be an original, and all of which together shall be deemed one and the same instrument and shall become effective when counterparts have been signed by each of the Parties and delivered to the other Parties; it being understood that all Parties need not sign the same counterparts.  Delivery and execution of the Agreement, including counterpart(s), may occur electronically via email, or by facsimile, with any signature transmitted electronically via email, or by facsimile, being binding with the same force and effect as if the Agreement, including counterpart(s), contained the signatory's original signature.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

**RECEIVER:**
**GlassRatner Advisory & Capital Group, LLC**


**By:** _____
Joel Murovitz (Nov 6, 2025 23:00:07 EST)
Joel Murovitz, as Receiver


**Date:** October 28, 2025


**AGENT:**
*MMG Management, LLC*

**By:** _____
Richard Ferguson (Nov 3, 2025 11:54:37 EST)
**Managing Partner Firm # H63854**
**Richard Ferguson # 277499**


**Date:** 11/03/20 _____

9

# GR - MMG Multi-Family Management Agreement - Magnolia Park

Final Audit Report                                    2025-11-07

| | |
|---|---|
| Created: | 2025-11-03 |
| By: | Kirstien Sasser (ksasser@mmgmgt.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAjEOCyNpQhcPl6KNrcq1FBh-N3cQJBWeT |

## "GR - MMG Multi-Family Management Agreement - Magnolia Park" History

📄 Document created by Kirstien Sasser (ksasser@mmgmgt.com)
2025-11-03 - 4:52:47 PM GMT

✉ Document emailed to Joel Murovitz (jmurovitz@glassratner.com) for signature
2025-11-03 - 4:52:51 PM GMT

✉ Document emailed to Richard Ferguson (rickferguson@atl-cre.com) for signature
2025-11-03 - 4:52:51 PM GMT

📄 Email viewed by Richard Ferguson (rickferguson@atl-cre.com)
2025-11-03 - 4:53:18 PM GMT

✍ Document e-signed by Richard Ferguson (rickferguson@atl-cre.com)
Signature Date: 2025-11-03 - 4:54:37 PM GMT - Time Source: server

📄 Email viewed by Joel Murovitz (jmurovitz@glassratner.com)
2025-11-07 - 3:59:44 AM GMT

✍ Document e-signed by Joel Murovitz (jmurovitz@glassratner.com)
Signature Date: 2025-11-07 - 4:00:07 AM GMT - Time Source: server

✔ Agreement completed.
2025-11-07 - 4:00:07 AM GMT

![Adobe Acrobat Sign]

"EXHIBIT B"

**TSP SECURITY SERVICES DBA ARMORGUARD PATROL (GEORGIA)**

# SECURITY SERVICES AGREEMENT

**This Security Services Agreement ("Agreement")** is entered into on. , by and between:

**Client:**

**Contractor :**TSP SECURITY SERVICES LLC 5630 GRAND BLVD NEW PORT RICHIE FLORIDA 34652

## 1. Scope of Services

1.1 Company shall provide security guard services for Client's Property :

- **SERVICE PROVIDED :**

- **Location:**

- GLASS RATNER COURT APPOINTED RECIEVER /CCH John Eagan I Homes, L.P. and CCH John Eagan II Homes, L.P. DBA  MAGNOLIA PARK APARTMENTS  60 Paschal St, Atlanta, GA 30314

- **Duration** :

AS NEEDED . NO SPECIFIED TIME PERIOD

- **Hours of Coverage:**

  27 HOURS PER DAY , 190 HOURS PER WEEK

1.2 Services include:

- Checking identification to ensure residence
- PATROLLING  entrances, exits, and event perimeters.

- Enforcing management rules and preventing disorderly conduct.

- Coordinating with Police Department and first responders as necessary.

- Responding promptly to emergencies or incidents.

1.3 Company shall provide a minimum of **3  Guards**, of which at least ***[1 # Supervisors]*** shall be designated supervisors/leads. Guards shall wear ***[TACTICAL UNIFORM ]*** and carry communication equipment (radios).

## 2. Term

This Agreement applies only to the services provided on the premises unless otherwise agreed in writing.

## 3. Staffing & Performance

3.1 Company shall ensure all Guards are properly licensed, trained, and have passed background checks as required by Florida law.

3.2 Armed Guards (if provided) must meet all state licensing requirements and maintain firearms liability insurance.

3.3 Company shall use commercially reasonable efforts to provide substitute personnel in the event of staff illness, emergency, or force majeure.

## 4. Payment

4.1 Client shall pay Company a total fee of  officers  $32 DOLLARS AN HOUR

4.2 190 HOURS PER WEEK .

4.3  PAYMENT ON A BI-WEEKLY BASIS

## 5. Independent Contractor

Company and it's Guards are independent contractors. Nothing in this Agreement shall be construed to create an employer-employee or joint venture relationship between Company and Client.

---

## 6. Licenses & Compliance

Company represents that it holds all necessary state and local licenses, permits, and certifications required to perform security services in Florida and shall provide proof to Client upon request.

---

## 7. Insurance

7.1 Company shall maintain during the Term:

- Commercial General Liability Insurance with limits not less than $1,000,000 per occurrence and $2,000,000 aggregate.

- Workers' Compensation insurance as required by law.

- ALL OFFICERS MUST HAVE CLEAN CRIMINAL BACKGROUNDS

7.2 Company shall provide Client with Certificates of Insurance evidencing such coverage and naming **THE CLIENT :**
 GLASS RATNER COURT APPOINTED RECIEVER /CCH John Eagan I Homes, L.P. and CCH John Eagan II Homes, L.P. DBA  MAGNOLIA PARK APARTMENTS  60 Paschal St, Atlanta, GA 30314

---

## 8. Indemnification

Company shall indemnify, defend, and hold

Harmless the client from ANY ACTIONS caused directly by the contractor . IT IS UNDERSTOOD BY THE CLIENT THAT THE CONTRACTOR WILL FOLLOW ALL LAW
 STATE OF …GEORGIA………….AND RULES GOVERNING SECURITY OFFICERS.

## 9. Limitation of Liability

Company's liability shall not be limited to the fees paid under this Agreement and shall extend up to the full limits of its insurance coverage.

---

## 10. Termination

Client may terminate this Agreement immediately if Company fails to provide the agreed number of Guards, fails to perform duties, or breaches this Agreement. In such case, Company shall refund any amounts paid for unperformed services.

---

## 11. Force Majeure

Neither party shall be liable for failure to perform due to causes beyond reasonable control, except that Company must use commercially reasonable efforts to provide replacement personnel or subcontracted staff to maintain minimum coverage levels.

---

## 12. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of …………………

---

## 13. Entire Agreement

This Agreement constitutes the entire understanding between the parties and supersedes all prior agreements. Amendments must be in writing and signed by both partie

---

## 13. Entire Agreement

This Agreement constitutes the entire understanding between the parties and supersedes all prior agreements. Amendments must be in writing and signed by both parties.

**SIGNATURES**

Authorized Representative

FOR

GLASS RATNER COURT APPOINTED RECIEVER /CCH John Eagan I Homes, L.P. and CCH John Eagan II Homes, L.P. DBA  MAGNOLIA PARK APARTMENTS  60 Paschal St, Atlanta, GA 30314

Joel Murovitz as Receiver

Date: _10/28/2025 _____

Authorized Representative

*TSP SECURITY SERVICES LLC*

Date: __10/28/2025_____

MARC E SINGLETARY IS AN AGENT FOR THE COMPANY KNOWN
AS TSP SECURITY SERVICES AND IS SIGNING ON BEHA OF
THAT ENTITY .

"EXHIBIT C"



**Reconciliation of Professional Charges and Payments**

MMG and GlassRatner
October 2025 through February 2026
Date:  3/12/26

**MMG**

| Pre-Petition Charges & Payments | Charges | Adj. Charges | Payments Issued | Adj. Balance | Date Issued |
|---|---|---|---|---|---|
| payroll 10/25 to 11/10 | $ 36,822.50 | $ 36,822.50 | $ 25,000.00 | $ 11,822.50 | 12/9/2025 |
| payroll 11/11 to 11/25 | $ 38,561.40 | $ 38,561.40 | | $ 50,383.90 | |
| payroll 11/26 to 12/9 | $ 41,588.39 | $ 41,588.39 | | $ 91,972.29 | |
| Oct PM Fee | $ 920.00 | $ 516.13 | | $ 92,488.42 | |
| Nov PM Fee | $ 14,260.00 | $ 8,000.00 | | $ 100,488.42 | |
| Dec 1-9 PM Fee | $ 4,140.00 | $ 2,322.58 | | $ 102,811.00 | |
| Reimbursements | $ 52.28 | $ 52.28 | | $ 102,863.28 | |
| **MMG Pre-Petition Totals** | | $ 127,863.28 | $ 25,000.00 | $ 102,863.28 | $ 102,863.28 |

| Post-Petition Charges & Payments | Charges | Adj. Charges | Payments Issued | Adj. Balance | Date Issued |
|---|---|---|---|---|---|
| payroll 12/10 to 12/25 | $ 33,760.32 | $ 33,760.32 | $ 41,588.39 | $ (7,828.07) | 12/16/2025 |
| payroll 12/26 to 1/8 | $ 34,858.55 | $ 34,858.55 | $ 16,426.78 | $ 10,603.70 | 1/13/2026 |
| payroll 1/9 to 1/22 | $ 33,726.08 | $ 33,726.08 | $ 16,716.83 | $ 27,612.95 | 1/28/2026 |
| Dec 10-31 PM Fee | $ 10,120.00 | $ 5,866.67 | $ 16,716.83 | $ 16,762.79 | 1/28/2026 |
| Jan PM Fee | $ 14,260.00 | $ 8,000.00 | | $ 24,762.79 | |
| Feb PM Fee | $ 8,000.00 | $ 8,000.00 | | $ 32,762.79 | |
| payroll 2/24/26 | $ 41,388.00 | $ 41,388.00 | | $ 74,150.79 | 2/18/2026 |
| Reimbursements | $ 5,359.04 | $ 5,359.04 | | $ 79,509.83 | |
| **MMG Post-Petition Totals** | | $ 170,958.66 | $ 91,448.83 | $ 79,509.83 | $ 79,509.83 |

**GlassRatner Advisory & Capital Group, LLC**

| Pre-Petition Charges & Payments | Charges | Payments Issued | Date Issued |
|---|---|---|---|
| Oct Fee | $ 967.74 | | |
| Nov Fee plus takeover Fee | $ 15,000.00 | | |
| Dec 1-9 PM Fee | $ 2,177.42 | | |
| Reimbursements | $ 176.00 | | |
| **GR Pre-Petition Totals** | $ 18,321.16 | $ - | $ 18,321.16 |

| Post-Petition Charges & Payments | Charges | Payments Issued | Date Issued |
|---|---|---|---|
| Dec 10-31 Fee | $ 5,322.58 | $ 15,176.00 | 12/16/2026 |
| Jan Fee | $ 7,500.00 | $ 8,503.74 | 1/12/2026 |
| Reimbursements | $ 36.00 | | |
| Feb Fee | $ 7,500.00 | $ 7,500.00 | 2/19/2026 |
| **GR Post-Petition Totals** | $ 20,358.58 | $ 31,179.74 | $ (10,821.16) |

# "EXHIBIT D"

**Reconciliation of Professional Charges and Payments - PRELIMINARY**

TSP (security)
October 2025 through February 2026
Date:  3/15/26

| TSP | | | | |
|---|---|---|---|---|
| Pre-Petition Charges & Payments | Charges | Payments Issued | Date Issued | Balance |
| Inv 243 - 10/20/25-11/2/25 | $ 6,897.00 | $ (15,665.00) | 11/24/2025 | |
| Inv 244 - 11/3/25-11/9/25 | $ 8,768.00 | $ (15,665.00) | 12/4/2025 | |
| Inv 256 - 11/10/25-11-16/25 | $ 8,049.00 | | | |
| Inv 264 - 11/17/25-11/23/25 | $ 8,056.00 | | | |
| Inv 269 - 11/24/25-11/30/25 | $ 8,056.00 | | | |
| Inv 276 - 12/1/25-12/7/25 | $ 8,040.00 | | | |
| MMG Pre-Petition Totals | $ 47,866.00 | $ (31,330.00) | | $ 16,536.00 |

| TSP | | | |
|---|---|---|---|
| Post-Petition Charges & Payments | Charges | Payments Issued | Date Issued |
| | | $ (8,040.00) | 12/15/2025 |
| | | $ (24,161.00) | 12/17/2025 |
| | | $ (8,040.00) | 1/5/2026 |
| | | $ (8,040.00) | 1/9/2026 |
| | | $ (16,080.00) | 1/16/2026 |
| | | $ (2,688.00) | 1/30/2026 |
| | | $ (2,688.00) | 2/6/2026 |
| | | $ (2,688.00) | 2/13/2026 |
| | | $ (2,688.00) | 2/20/2026 |
| | | $ (2,688.00) | 2/27/2026 |