UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISON

---------------------------------------------------------------- x
                                                                  :
In re:                                                            :   Case No. 25-24569-MAM
                                                                  :   (Jointly Administered)
CCH JOHN EAGAN I PARTNERS, LLC,                                   :
                                                                  :
CCH JOHN EAGAN II PARTNERS, LLC,                                  :
                                                                  :   Case No. 25-24571-MAM
                                                                  :
           Debtors.                                               :   Chapter 11
                                                                  :
---------------------------------------------------------------- x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE DEBTORS' DISCLOSURE STATEMENT**

The Official Committee of Unsecured Creditors appointed in the above-captioned chapter

11 cases (the "**Committee**"), hereby objects (the "**Objection**") to the *Disclosure Statement in*

*Support of Joint Chapter 11 Plan of Reorganization* [Docket No. 87] (the "**Disclosure**

**Statement**") related to the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 88]

(the "**Plan**"). In support of this Objection, the Committee respectfully states as follows:

**BACKGROUND**

1.      On December 10, 2025 (the "**Petition Date**"), CCH John Eagan I Partners, LLC

and CCH John Eagan II Partners, LLC (jointly, the "**Debtors**") filed voluntary petitions for relief

pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtors remain in possession of their property and continue to operate and

manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.

3.      On March 2, 2026, the Office of the United States Trustee, pursuant to section

1102(a) of the Bankruptcy Code, appointed the Committee. The Committee is currently

comprised of the following members: (i) Yalvitzs Jones, Corine 51 LLC; (ii) G. Patrick Williams, Williams Cleaning Service; (iii) Arnold E. Little, Sr., Arnold E. Little Heating & Air Conditioning, LLC; (iv) Herman Otis favors III, favors Property Group Contracting, LLC; (v) Christopher Greem and Shavonnne Ochoa, Epidemic Home Services; (vii) Marshall Andrea, Siix Agency, LP; and (viii) Ronald Amsterdam, 39-Holdings, LLC. The Committee selected Cullen and Dykman as its counsel on May 11, 2026, respectively.

4.      On May 11, 2026, the Committee elected to retain Cullen and Dykman LLP to represent it in this case. Cullen and Dykman LLP retention application [Dkt No. 159] is pending and scheduled of hearing on July 7, 2026 [Dkt. No. 160].

5.      On March 9, 2026, the Debtors filed the Disclosure Statement and the Plan. The Debtors' current exclusive period to solicit acceptance of the Plan was extended through August 7, 2026 [Dkt. No. 167].

6.      The Debtors' Plan and its proposed 100% distribution to unsecured creditors is based on obtaining future investment based on tax credits and the Debtors' post-confirmation operating income. The Debtors' current budget shows no positive operating income. In addition, the Debtors' current cash position is opaque. The most recent budget states that the "Beginning Receiver Funds" includes security deposits but does not state the amount of these security deposits. *See* Fifth Interim Agreed Order Granting Expedited Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. Sec 363 and Scheduling Further Hearing [Dkt. No. 123]. Committee counsel has asked Debtors' counsel to provide the Committee with the amount of security deposits the Debtors are presently holding so the Committee can accurately evaluate the Debtors' cash position but has not yet received a response.

7.      The Committee joins in some of concerns regarding the feasibility of the Debtors' Plan expressed by the Housing Authority of the City of Atlanta, Georgia (the "**AHA**") as set forth in its objection to the Disclosure Statement [Dkt. No. 139] (the "**Atlanta Housing Objection**"). The Committee has reached out to the Debtors to request information addressing some of its concerns but has not yet received any information. Specifically, the Committee requested the information listed below (the "**Requested Information**") and believes that much of this information should be added to the Disclosure Statement to provide unsecured creditors with sufficient information to assess the viability and feasibility of the Plan.

    i.      The total amount of security deposit the Debtors are holding.

    ii.      The most recent third-party valuation of the Debtors' property and business.

    iii.      Projections through December 2027, the refinancing/ resyndication outside date.

    iv.      A detailed description of the obligations and requirements to actually complete the financing/ resyndication process, including a timeline as to each step, how the Debtor intends to meet these obligations and fund them.

    v.      The Disclosure Statement does not describe what will happen if the refinancing/ resyndication raises insufficient funds to pay unsecured creditors in full. What do the Debtors intend to do in this event? Would the Debtors consider amending the Plan to provide an alternative to toggle to a sale if the timeline is not met and/or if the refinancing/ resyndication does not raise sufficient funds to pay unsecured creditors in full?

    vi.      Provide a liquidation analysis.

    vii.      The Plan effective date/ substantial consummation should be conditioned upon the Debtors completing a refinancing/ resyndication that raises sufficient funds to pay unsecured creditors in full or the closing of a sale if the Debtors are willing to consider a toggle feature suggested above.

8.      The Committee is filing this objection to preserve its position and meet the June 30 objection deadline, but is ready to work with the Debtors to obtain the information it needs to properly assess the viability of the Debtors' Plan, propose potential changes and if possible amend the Disclosure Statement into a document the Committee can support.

## OBJECTION AND LEGAL SUPPORT THEREFORE

9.      The Committee believes that without the Requested Information, the Disclosure Statement does not contain "adequate information" within the meaning of section 1125 of the Bankruptcy Code and therefore cannot be approved.  Section 1125(b) of the Bankruptcy Code conditions a debtor's solicitation of votes on a proposed chapter 11 plan on the bankruptcy court's determination that the disclosure statement contains "adequate information."  11 U.S.C. §1125(b).  The Bankruptcy Code defines adequate information as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1).  *See also In re Bravo Brio Restaurants, LLC*, No. 6:25-BK-05224-LVV, 2026 WL 898257, at *7 (Bankr. M.D. Fla. Mar. 31, 2026) ("'The purpose of the disclosure requirements in §§1123 and 1125 is to allow creditors to cast an informed vote for or against a plan of reorganization.'" (*quoting In re M. Davis Mgmt., Inc.*, No. 6:09-BK-02071-KSJ, 2011 WL 3585821, at *10 (Bankr. M.D. Fla. July 19, 2011)); *In re Adana Mortg. Bankers, Inc.*, 14 B.R. 29, 30 (Bankr. N.D. Ga. 1981) (denying approval of the disclosure statement because it did not contain financial information such as "data, valuations, or projections relevant to the determination by the Creditors of whether to accept or reject Debtor's Plan ... is the nature of that required under Section 1125 to constitute 'adequate information.'").

10.      "Case law under §1125 of the Bankruptcy Code has produced a list of factors disclosure of which may be mandatory, under the facts and circumstances of a particular case, to meet the statutory requirement of adequate information. Disclosure of all factors is not necessary in every case. Conversely, the list is not exhaustive, and a case may arise in which disclosure of all these enumerated factors is still not sufficient to provide adequate information for the creditors

to evaluate the plan." *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

11.     Such factors may include:

(1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*Id.* The Metrocraft Court upheld the Committee's objection and denied approval of the debtor's disclosure statement stating the "Committee legitimately desires more information before an intelligent decision can be rendered as to the acceptability of the Chapter 11 plan." *Id*. a 569-71 (finding the disclosure statement did not contain adequate information in part because it did not include, among other things, the actual or projected realizable value from machinery, fixtures and equipment, projections as to the collection of accounts receivables, avoidance actions or other potential assets or a liquidation analysis).

12.     "The thrust of §1125 is disclosure; to inform the uninformed parties in interest (the typical 'hypothetical reasonable investor') in a formal and uniform way concerning the condition of the debtor." *Matter of Nw. Recreational Activities, Inc.*, 8 B.R. 10, 11 (Bankr. N.D. Ga. 1980). "The congressional concern was to require the debtor to furnish to the electorate to the confirmation process sufficient financial and operating information to enable each participant to make an 'informed judgment' whether to approve or reject the proposed plan." *Id*. The House Report to the Bankruptcy Reform Act 1988 instructs that "the premise of the bill's financial

standard for confirmation is the same as the premise of the securities law: parties should be given adequate disclosure [and] relevant information, and they should make their own decision on the acceptability of the proposed plan [of] reorganization." *In re Dow Corning Corp.*, 227 B.R. 111, 119 (Bankr. E.D. Mich. 1998) (*quoting* H.R. Rep. No. 95-595 at 224 (1977)).

13.     The Disclosure Statement does not contain sufficient information regarding the Debtors' current cash position or projections as to its future revenue and cash position. This is significant for two reasons. First, the Debtors propose to pay unsecured creditors in part from post-confirmation net operating income. Disclosure Statement, p. 9 ("holders of Allowed Class 4 Claims shall receive Pro Rata distributions consisting of 25% of the Debtors' net operating income, on a pro-rata quarterly basis, until such claims are paid in full. Any remaining unpaid balance of an Allowed Class 4 Claim at the time of the LIHTC Closing shall be paid in full within thirty (30) days of the LIHTC Closing."). The Debtors' current budget shows no positive operating income and the Debtors have not provided any post-confirmation projections. The unsecured creditors need to understand whether this projected distribution is feasible.

14.     Second, unsecured creditors need to understand how the Debtors intend to fund their post-petition operations and the obligations of the resyndication and LIHTC Transaction processes. As noted above, the Debtors' current budget shows that they are currently running at a slight deficit. In addition, the Debtors indicate that the resyndication and LIHTC Transaction processes will involve numerous additional expenses, including (i) obtaining several third party reports: "e.g., market studies, environmental assessments, and capital needs assessments" and (ii) retaining a number of advisors: tax counsel, investor counsel and bond counsel. Disclosure Statement, pp. 15-16. The Debtors also state that there are "necessary repairs" to be made to the Property and that they need to pay for these repairs with the $1.2 million escrowed by Bridgeview

Funding LLC but provide no further detail regarding the cost of these "necessary repairs" and whether this escrowed amount will be sufficient. Disclosure Statement, pp. 16.

15. Finally, the Debtors cite the "availability of supplemental debt financing" as a potential risk factor but provide no other details regarding the amount, source and terms of any such supplemental financing. Disclosure Statement, p. 16.

16. The unsecured creditors need substantially more information regarding the Debtors' projected revenues and expenses, including those related to the resyndication and LIHTC Transaction processes, and how the Debtors intend to fund these expenses. If the Debtors intend to take on additional debt financing, the amount, source and terms of this financing should be disclosed. This information is necessary for the unsecured creditors to assess the Debtors' ability to pay them from net operating income and close a LIHTC Transaction, the two proposed sources of distributions to unsecured creditors.

17. The Disclosure Statement also does not provide sufficient information regarding the resyndication and LIHTC Transaction processes for the creditors to assess the Debtors' likelihood of success or address the alternatives sources of recovery of the resyndication and LIHTC Transaction processes fail. As set forth in the Atlanta Housing Objection, AHA believes that there is "no reasonable prospect" that the Debtors will be successful in this process. AHA proposes that the Debtors consider a sale of the Property. The Committee believes that additional information is needed to allow creditors to assess the Debtors' ability to close both LIHTC Transactions, and what happens if the Debtors are not able to close one or both of the LIHTC Transactions. Further, the Committee believes that the Debtors should build such alternatives into the Plan, along with milestones for completion of the various stages of the resyndication and LIHTC Transaction processes so that if the Debtors are not making progress, the Plan can toggle

to a sale process and ensure a source of recovery for creditors.

18.      The Committee believes that in its current form the Disclosure Statement falls far short of containing the "adequate information" required by section 1125 of the Bankruptcy Code and should not be approved. The Committee is ready and willing to work with the Debtors to obtain the Requested Information, negotiate appropriate changes to the Disclosure Statement and the Plan, and to supplement the Disclosure Statement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was served on all counsel of record or pro se parties via the Court's CM/ECF notification to those parties who are registered CM/ECF participants in this case on June 30, 2026.

Dated: June 30, 2026                    CULLEN AND DYKMAN LLP


By: *Michael H. Traison*
Michael H. Traison
Michelle McMahon
Kyri Christodoulou
375 S. County Road, Suite 210
Palm Beach, Florida 33480
Telephone: (312) 860-4230
Email: mtraison@cullenllp.com
        mmcmaon@cullenllp.com
        kchristodoulou@cullenllp.com


Proposed Attorneys for Committee of Creditors
Holding Unsecured Claims